JSG

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 710 | **DATE** | 5/10/2004 |
| **CASE TITLE** | Moskerc vs. American Airlines | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion, the Court hereby grants the defendant's motion for summary judgment in its entirety. All pending dates and motions are hereby terminated as moot. Terminating case. Enter Memorandum Opinion.

(11) ■  For further detail see memorandum opinion attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | # number of notices | |
| | Notices mailed by judge's staff. | | MAY 1 1 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 52 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LOUIS M. MOSKERC,          )
                                     )
               Plaintiff,      )
                                     )
           v.              )      No. 02 C 710
                                     )
AMERICAN AIRLINES, INC.,  )
                                     )
               Defendant.   )

DOCKETED
MAY 11 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

     This matter is before the court on Defendant American Airlines' motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment in its entirety.

## BACKGROUND

     Plaintiff Louis Moskerc ("Moskerc") is currently an American Airlines ("American") employee working as a Customer Service Manager ("CSM") at O'Hare airport. Moskerc began working for American in 1967 and in 1994 he was promoted to the Passenger Services CSM position ("original CSM position"). In October of 1998 Moskerc suffered a back injury at work which required surgery to

1

remedy. Moskerc received nearly seventeen months of medical leave and in March of 2001 Moskerc's doctor authorized him to return to work with a permanent lifting restriction, prohibiting lifting, pulling, or pushing anything exceeding 50-60 pounds.

In March of 2001, when Moskerc returned to work, American's written job description for the CSM position required the employee to lift 100 pounds. Based upon the lifting restrictions indicated by Moskerc's doctor, American did not return him to a CSM position. American conducted an internal search of available openings. American also allowed Moskerc to apply to employers other than American and to continue to receive benefits from American. American also assigned Moskerc a human resources representative to assist him in his job search for other available positions.

Moskerc expressed interest in a Fueling CSM position. American claims that the Fueling CSM position was subject to the same job description as Moskerc's previous CSM position requiring lifting up to 100 pounds. Based on this lifting requirement, American stated that it could not consider Moskerc for the Fueling CSM position.

Moskerc later expressed interest in the Lost Time CSM position. American claims that the Lost Time CSM position requires extensive financial analysis and strong computer skills. The Lost Time CSM position calls for mining through data using various software packages, including Excel to generate various reports and presentations for upper-level management. Although interested in the position,

Moskerc failed to complete the required interview test. American ultimately hired another candidate for the Lost Time CSM position. Moskerc also expressed interest in an Analyst Manpower position. American alleges that this position requires even greater computer skills, together with expertise in budgeting and cost analysis. However, Moskerc never applied for this position and American offered the position to another candidate.

During this time Moskerc requested an accommodation review from American's Accommodation Review Board ("ARB"). The ARB is an advisory panel made up of employees representing various sections of American's workforce, including American's medical, human resources, operations, and legal departments. American claims that the ARB's general function is to consider employee requests for accommodation and any employee may submit a request for an accommodation. Moskerc submitted a request to the ARB asking to return to his CSM position despite his lifting restriction.

In order to evaluate Moskerc's request, American hired a professional ergonomist to conduct a full-scale analysis of Moskerc's original CSM position. The ergonomist prepared a draft report and presented her findings to American in December of 2001. Following a review of the report and discussion with operations, American adopted the ergonomist's findings and modified the original CSM position lifting requirements to 55 pounds, effective July 15, 2002. American returned Moskerc to his original CSM position one week later on July 22, 2002.

On January 28, 2002, Moskerc filed his civil complaint with this court alleging a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Moskerc also asserts a state law claim for breach of contract.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a

4

motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. ADA Claims

The ADA prohibits covered entities, including private employers, from discriminating against a qualified individual because of his disability. 42 U.S.C.§ 12112(a). Specifically, the ADA provides "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* Under the ADA an individual has a

disability if: 1) he suffers from a "physical or mental impairment that substantially limits one or more of the major life activities," or 2) if he has a "record of such an impairment," or 3) his employer regards him as "having such an impairment." 42 U.S.C. § 12102(2).

### A. Actual Disability ADA Claim

Moskerc claims that his back injury is a disability and that his depression was a disability. When Moskerc returned to work after his back surgery, his doctor indicated that Moskerc had a permanent lifting restriction, prohibiting lifting, pulling, or pushing anything exceeding 50-60 pounds. Moskerc fails to respond to American's arguments regarding whether he has a disability. Instead Moskerc attempts in his answer to gloss over the critical requirement of a disability to support his ADA claims and proceeds to argue other aspects of his claim. However, all of Moskerc's ADA arguments in regards to his actual disability claim are for naught if he cannot show that he had a disability.

The only argument put forth by Moskerc in this regard is that American is somehow being inconsistent when it argues that Moskerc did not have a disability on one hand and argues that he was unable to perform the essential functions for the original CSM position. (Ans. 10). However, Moskerc's argument merely depicts

his misunderstanding of the law surrounding the ADA. As will be explained below it is entirely possible that an individual may not be able to continue in a job because he cannot perform the essential functions of the job and yet still not have a disability.

The ADA prohibits discrimination against a *"qualified individual* with a disability. . . ." 42 U.S.C. § 12112(a)(emphasis added). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the *essential functions* of the employment position that such individual holds or desires." 42 U.S.C. 12111(8)(emphasis added). Thus, whether or not Moskerc can perform the essential functions of the position is pertinent in determining whether or not he is a qualified individual not to whether or not he has a disability. In fact the caselaw surrounding the ADA is very clear that simply because an individual cannot perform the tasks associated with his job does not mean that he has a disability. *See Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002)(stating that "[a]n impairment that interferes with work-related tasks . . . does not necessarily rise to the level of a disability within the meaning of the ADA."). The proper inquiry in determining whether an individual has a disability is whether the individual has a "substantial limitation on a major life activity" and in making such a determination the "central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not

7

whether the claimant is unable to perform the tasks associated with her specific job."
*Id.* at 781. Tasks central to most people's daily lives include tasks such as lifting a
pencil, toothbrush, or "otherwise car[ing] for oneself. . . ." *Id.. See Toyota Motor
Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 198 (2002)(listing as examples of
tasks central to daily life in ADA case: walking, seeing, hearing, doing household
chores, bathing, and brushing teeth); *Mays v. Principi,* 301 F.3d 866, 869 (7th Cir.
2002)(suggesting in Rehabilitation Act case that walking, seeing, reproduction, and
the use of an arm would be tasks that are central to most people's daily lives).

Moskerc's answer is devoid of any mention to his tasks central to his daily
life. Instead he attempts to combine various elements and stages of his ADA claim
putting forth a collection of arguments that in total appear to claim that Moskerc is
entitled to succeed on his ADA claim based simply on general notions of fairness.
The ADA is not intended to be a catchall protection for all that are injured and is not
intended to cover each and every mental or physical problem. *See Christian v. St.
Anthony Med. Ctr., Inc.,* 117 F.3d 1051, 1053 (7th Cir. 1997)(stating that the ADA is
"not a general protection of medically afflicted persons. . . .). If Moskerc could not
perform the tasks of his CSM position and had a weight lifting restriction, he did not
automatically have a disability. *See Mays,* 301 F.3d at 869(indicating in
Rehabilitation Act case that a person that can lift ten pounds is not disabled and

noting that although the "number of Americans restricted by back problems to light work is legion . . . [t]hey are not disabled."); *Wilcox v. American Stores*, 2002 WL 31654938, *5 (N.D. Ill. 2002)(noting that plaintiff's restriction from lifting more than thirty pounds was not a disability under the ADA). Rather the intention of the ADA is to limit coverage to an individual that cannot find other productive work because the impairment is so limiting in his life. *See Mack*, 380 F.3d at 781 (stating that "[a]n inability to lift heavy objects may disqualify a person from particular jobs but does not necessarily interfere with the central functions of daily life.").

In this case Moskerc admits pursuant to Local Rule 56.1 that his back condition caused him to be "restricted *somewhat* in [his] motion and ability to move" and that he could not "really make any sudden movements" like "twisting or bending quickly" and could not sit for long periods of time. ( R SF 50). When asked what activities have been affected by his back injury Moskerc did not make reference to tasks central to a person's daily life such as brushing his teeth or otherwise caring for himself. Instead Moskerc stated: "[I]t limits me in my ability to play golf. Although I can, I can't do it like I did." (Moskerc dep. 263). As indicated above, the ADA is intended to protect individuals that are unable to perform the rudimentary tasks in their lives. Thus, it is somewhat appalling that Moskerc should seek the protection of the ADA because he now gets a lower golf score than he did prior to his back

9

injury. Moskerc states that he "sometimes" has problem sleeping, but he in no way indicates that any tasks central to his daily life are affected by his back injury. (Moskerc dep. 263). In addition he indicates that his problem with sleeping is at least in part due to his anxiety problem and his anxiety medication helps him get to sleep. (Moskerc dep. 264). Moskerc admits that he was able to work on his antique car, but claims that he did not simply because he was depressed. (Moskerc dep. 267). Moskerc was asked at his deposition what jobs he applied for since 1998 outside of American jobs and he responded that he applied for jobs with other airlines, a position with a ground handler, positions at various casinos in the Chicagoland area, a position with a railroad, and a position with "TSA." (Moskerc dep. 230). When asked at his deposition whether he "could have physically performed any of those jobs" Moskerc responded: "Yes." (Moskerc dep. 230). Moskerc admits pursuant to Local Rule 56.1 that he is "currently working at American without issues related to his back or lifting." ( R SF 57).

Moskerc also claims that he became depressed after the back injury and that the depression was a disability. Moskerc admits pursuant to Local Rule 56.1 that at his deposition he testified that he had some temporary difficulty with conjugal relations with his wife but that he was later able to resume conjugal relations with his wife. ( R SF 55). When Moskerc was asked at his deposition whether or not in

March of 2001 he had "any reason to believe that [his] depression might prevent [him] from working" Moskerc responded: "No." (Moskerc dep. 271). Moskerc admits pursuant to Local Rule 56.1 that his depression symptoms are under control since he began taking medication. ( R SF 55).

Finally, Moskerc admits pursuant to Local Rule 56.1 that "he was able to return to work in March 2001 and that he was capable, both *physically* and *mentally*, at work–both at and outside of American." ( R SF 56). Moskerc also admits that he "testified at his deposition . . . that he had no difficulty performing his major life activities." ( R SF 54). Thus, it is no wonder that Moskerc attempts to sidestep the disability issue because he readily admits that he did not have any difficulty performing major life activities and attempts to claim an injustice because his golf game has suffered and he has not felt like working on his antique car. Therefore, to the extent that Moskerc claims an actual disability we grant American's summary judgment motion on the ADA claim.


B. "Regarded As" ADA Claim

As stated above, a person has a disability if his employer regards him as "having such an impairment." 42 U.S.C. § 12102(2)(C). A plaintiff may establish a disability under Subsection (2)(C) by showing that a "(1) a covered entity mistakenly

believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999). The record in this case bears no indication that American ever regarded Moskerc as having a "substantial limitation on a major life activity." Moskerc returned to work in March of 2001 with the lifting restriction from his doctor. He was otherwise authorized to work by his doctor. American did not return Moskerc to his old position, but it assisted Moskerc with a job search, set up interviews for other positions, and authorized him to seek external positions. In addition, after the ergonomist determined that the weight lifting restriction for Moskerc's original position should be reduced, American returned Moskerc to his original CMS position. Those actions are hardly the actions of an employer that deems an employee as unable to work because of a substantial limitation on a major life activity. Moskerc has utterly failed to provide any evidence that would indicate that he was regarded as having a disability. Moskerc cannot simply rely upon the restrictions listed in his doctor's note to support his "regarded as" claim. *See Skorup v. Modern Door Corp.*, 153 F.3d 512, 515-16 (7th Cir. 1998)(holding that "doctor's work restriction" was not sufficient evidence to support the plaintiff's "regarded as" claim). Therefore, to the extent that Moskerc

asserts an ADA claim based on allegations that American regarded Moskerc as having a disability, we grant American's motion for summary judgment.

### C. Qualified Individual

The ADA prohibits discrimination against a *"qualified individual* with a disability. . . ." 42 U.S.C. § 12112(a)(emphasis added). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8). We note that even if Moskerc was able to show that he had a disability or was regarded as having a disability his ADA claims fail because no reasonable trier of fact could find that he was a qualified individual. Until American revised the job description for Moskerc's original CSM position the position required Moskerc to lift up to 100 pounds. Moskerc admitted in a letter to American in 1999 before the instant lawsuit was initiated that lifting 100 pounds was part of his job description. There is testimony of American employees that support American's belief that the job description should include a 100 pound lifting requirement. American's position that Moskerc was not a qualified individual is also supported by the fact that Moskerc injured his back while performing his routine tasks associated with the CSM position.

In regards to the positions applied for at American other than his original CSM position Moskerc fails to provide evidence sufficient for a reasonable trier of fact to conclude that there was any improper actions by American or that Moskerc had the necessary qualifications for some of the positions. In addition, Moskerc failed to properly apply for a position and failed to properly complete the interview process for another position.

Moskerc attempts to make much of the fact that American eventually changed the job description for his original CSM position. However, American should not be criticized for its actions such as hiring an ergonomist. It was the ergonomist's study that opened the door for Moskerc to return to his original position. Truly, what incentive did American have to hire the ergonomist if the results were to be fodder for Moskerc's tale of mistreatment and civil litigation. In fact, American should be commended because it did everything that could be asked of an employer. Moskerc was injured on the job. He was put on medical leave and when he returned his doctor's lifting restriction did not match up with the current job description. American made efforts to assist Moskerc in locating other employment, allowed him to seek external employment while continuing to receive benefits, and hired an ergonomist to reevaluate his original CSM position. After the investigation was completed American returned Moskerc to his original position. Moskerc is

disgruntled because American would not instantly amend the job description for his original CSM position based upon Moskerc's own opinion and the opinions of other workers. American has gone out of its way beyond any requirements contained in the ADA to assist Moskerc in locating employment and in return Moskerc brought the instant baseless suit. It is litigious employees such as Moskerc that diminish the incentive for employers to assist employees in such situations when the employers will face baseless suits such as this regardless of all the assistance provided by the employers.

## II. ADEA Claims

The ADEA states that: "It shall be unlawful for an employer . . . to fail to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. . . ." 29 U.S.C. § 623 (a)(1). A plaintiff is required to establish a *prima face* case for an ADEA claim either under the direct approach or under the indirect burden-shifting approach. *Schuster v. Lucent Technologies, Inc.*, 327 F.3d 569, 573 (7th Cir. 2003). To establish a *prima facie* case of age discrimination under the indirect approach, a plaintiff must show that he was: 1) over 40 years of age, 2) performing his job in a satisfactory manner, 3) subject to an

15

adverse employment action, and 4) "treated less favorably than younger, similarly situated employees." *Id.* Once a *prima facie* case is established the burden shifts to the employer to offer a legitimate non-discriminatory reason for the employment action and if such a reason is provided the burden then shifts back to the plaintiff to show that the given reason is merely a pretext for unlawful discrimination. *Id.*

Moskerc has failed to provide sufficient evidence to proceed under the direct approach and will need to proceed under the indirect approach. In this case Moskerc has failed to point to sufficient evidence that similarly situated employees were treated more favorably than him. Moskerc was not qualified for the other positions sought at American other than the CSM fueling position and his own doctor's note indicated that he was unable to perform the required weight lifting for the position. Moskerc has failed to show that any of the individuals chosen for the positions applied for by Moskerc were similarly situated.

For instance, Moskerc alleges that American discriminated against him because of his age by rejecting him for the Lost Time CSM position and the Analyst Manpower position. Moskerc admits pursuant to Local Rule 56.1 that the Lost Time CSM position required extensive financial analysis and computer skills. ( R SF 34). Moskerc also admits that the position required that prospective hires have the ability to download large volumes of data from mainframe computer systems into a

personal system and manipulate this data by utilizing Word and Excel software to generate management reports. ( R SF 34). Moskerc also admits that he did not choose to complete the interview process for the Lost Time CSM position. ( R SF 37). Moskerc admits that he refused to take the test given to all applicants. ( R SF 38). Moskerc admits that he simply dropped the test on the desk of the test administrator and told the administrator that the test was unnecessary. ( R SF 38). Moskerc admits that the individual eventually hired for the position, unlike Moskerc, had a Bachelor's degree in finance, extensive knowledge of financial analysis, and very strong computer skills. ( R SF 36, 39). Although Moskerc expressed interest in the Analyst Manpower position, he admits he never applied for the position. ( R SF 33).

American has provided legitimate non-discriminatory reasons for all of its employment decisions concerning Moskerc. Moskerc in turn has utterly failed to provide any evidence that the given reasons are a pretext. American claims that it believed that the Fueling CSM position was under the same written job description as the Passenger Services CSM requiring employees to lift a maximum of 100 pounds. In regards to a pretext analysis it is irrelevant whether the information American based its decision on was correct. *See Essex v. UPS, Inc.*, 111 F.3d 1304, 1310 (7th Cir. 1997)(stating that whether not "the employer was mistaken or based

its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered explanation is pretextual"). American argues that even Moskerc believed the Fueling CSM position was covered by the same written description as the Passenger Services CSM, requiring a lifting ability up to 100 pounds. ( R SF 29). Additionally, American argues that it believed the Fueling CSM is frequently required to assist with the handling of very heavy fueling and de-icing equipment which weighed anywhere from 60-80 pounds. The evidence clearly establishes that American honestly believed the Fueling CSM position included a 100-pound lifting requirement. Moskerc provided no evidence that American did not believe the Fueling CSM was covered by the 100-pound lifting requirement. As noted above, even if American decided based on incorrect information to deny Moskerc's application, pretext is not necessarily established. This court does not "sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986). Instead, this court's sole inquiry is whether the business's decision was made on the basis of age, an impermissible criteria, not whether a good decision results from correct information.

The record clearly shows that American made efforts to assist Moskerc find new employment. The fact that American hired an ergonomist to reevaluate his original CSM position and that Moskerc was returned to that position undercuts any

allegations that American intended to discriminate against Moskerc because of his age. The evidence overwhelmingly indicates that American's intention was to assist Moskerc in continuing to be a productive employee at American or in other employment. Therefore, we grant summary judgment on the ADEA claim.


### III. Breach of Contract Claim

Moskerc claims that American breached an employment contract by not immediately returning him to his original CSM position when he returned to work in March of 2001. Under Illinois law an employee is presumed to be an at-will employee unless the employer sets a fixed term for the duration of the employment. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr*, 505 N.E.2d 314, 318 (Ill. 1987). However, an employee handbook can convert at-will employment to an employment contract if "the traditional requirements for contract formation are present." *Id.* 490. In Illinois "[e]mployment contracts in Illinois are presumed to be at-will and are terminable by either party; this rule, of course, is one of construction which may be overcome by showing that the parties agreed otherwise . . and [a]s with any contract, the terms of an employment contract must be clear and definite." *McInerney v. Charter Golf, Inc.,* 680 N.E.2d 1347, 1349(Ill. 1997). In order for an employee handbook or policy statement to qualify as an offer "the language of the policy

statement must contain a clear promise clear enough that an employee would reasonably believe an offer has been made." *Duldulao*, 505 N.E.2d at 318.

Moskerc contends American's guidelines concerning a management reduction in force and the reinstatement rights section of American's extended medical leave policy created an enforceable employment contract. However, there is insufficient evidence for a reasonable trier of fact to conclude that either the reduction in force policy or the reinstatement rights section created an enforceable contract. Moskerc admits that American's Reduction-in-force Policy provides: "Management/Specialist employees do not generally have job security or location protection *when a reduction in force occurs*, except . . . [i]f you were a Passenger Service Manager . . . as of June 1, 1984, you have and will continue to have job security and any location protection for as long as you remain in that job . . . ." (emphasis added)( R SF 68). American correctly points out that it is clear from the plain language of the policy that it is not applicable to the instant case because Moskerc is not claiming job security due to a reduction in force. The statement is also clearly not an offer and is merely a general statement of American's policy.

Moskerc admits that the reinstatement rights section of American's extended medical leave policy states: "You will be reinstated to your same or similar job in your former location upon the conclusion of your leave with the approval of the AA

20

Medical Department." The statement cannot reasonably be considered an offer. It is not a clear and definite promise of permanent employment or employment for any duration of time. The statement contains no promissory language indicating a fixed term of employment. It is no more than a general policy statement that American would not discharge Moskerc because of his work related injury.

Furthermore, even if Moskerc could establish the traditional elements of contract formation, in regards to the reinstatement rights section of American's extended medical leave policy, it is clear American did not breach the agreement. The evidence clearly establishes that American honored its policy by returning Moskerc to his position after reevaluating the lifting requirement. The policy provided that Moskerc would be returned to his position "with approval of the AA medical department." Moskerc did not have clearance from American's medical department due to his personal doctor's lifting restriction. In his answer to the instant motion Moskerc's only cogent response to this argument is that whether or not the American medical department withheld medical clearance in bad faith and without a justifiable basis is a question of fact for the jury. We disagree. Even if it were a question of fact, Moskerc is only entitled to present such a question to a jury if he has some evidence to support his position. He is not entitled to present the question to the jury and allow the jury to speculate in the absence of evidence that

the medical department acted in bad faith. Therefore, we grant the motion for summary judgment on the breach of contract claim.

## CONCLUSION

Based on the foregoing analysis, we grant American's motion for summary judgment in its entirety.


Samuel Der-Yeghiayan
United States District Court Judge


Dated: May 10, 2004